**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 11-110-DLB**

**JASON C. STANLEY**                                                                    **PLAINTIFF**


**VS.**                          **MEMORANDUM OPINION AND ORDER**


**OUR LADY OF BELLEFONTE HOSPITAL, INC., ET AL**                **DEFENDANTS**

\*   \*   \*   \*   \*   \*   \*   \*   \*

**I.   INTRODUCTION**

This is an action for disability discrimination in employment under the Americans

With Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* ("ADA").  By his First Amended

Complaint (Doc. # 17), Plaintiff Jason Stanley alleges that Defendants Our Lady of

Bellefonte Hospital, Inc. ("Defendant Hospital"), Bon Secours, Inc., Bon Secours Health

System, Inc., Bon Secours Kentucky Health System, Inc. (collectively "the Corporate

Defendants"), Jeanni Thomas, Netti Damron, Joyce Menshouse, Kim Bellew, Jennifer

Moore, and Judy Daniels (collectively "the Individual Defendants") wrongfully terminated

his employment as a nurse at Defendant Hospital in Ashland, Kentucky, based on the

unsubstantiated belief that he had attempted to steal and use medication from the Hospital,

all in violation of the ADA, the Rehabilitation Act, 29 U.S.C. § 794, and Kentucky common

law.  (*See* Doc. # 17).  Plaintiff further alleges that Defendants subsequently filed a

baseless complaint against his nursing license in an effort to destroy his nursing career, in

violation of several state laws.  (*Id.* at ¶ 1).  The Court has federal question jurisdiction over

1

Plaintiff's federal claims, and supplemental jurisdiction over Plaintiff's state claims.

This matter is currently before the Court on the Motion To Dismiss Complaint (Doc. #9) filed herein by all Defendants except Defendants Moore and Daniels (collectively "the Original Defendants") (fully briefed - *see* Docs. # 20, 22), the Motion To Dismiss Amended Complaint In Part (Doc. # 26) filed herein by Defendants Moore and Daniels (fully briefed - *see* Docs. # 39, 43), and Plaintiff's Motion For Leave To File A Second Amended Complaint (Doc. # 45)(fully briefed - *see* Doc. # 47).   All motions are now ripe for review.   For the reasons set forth below, Defendants' Motions To Dismiss (Docs. # 9, 26) are **granted in part** and **denied in part**, and Plaintiff's Motion For Leave To File A Second Amended Complaint (Doc. # 45) is **denied.**

## II.   FACTUAL[1] AND PROCEDURAL BACKGROUND

Plaintiff Jason Stanley was hired as an at-will registered nurse in approximately 2005 by Defendant Hospital in Ashland, Kentucky.   At the time he was hired, Plaintiff informed Defendant Hospital that he was a recovering drug addict, and he enrolled in a rehabilitation program known as the Kentucky Alternative Recovery Effort ("KARE").   As a term of his employment, Plaintiff agreed to regularly apprise Defendant Hospital of his progress in KARE.   During his employment, Plaintiff not only complied with this reporting requirement, but passed every drug test administered to him.

Then, on October 9, 2010, Plaintiff was involved in an incident that led to his termination.   On that day, Plaintiff arrived at work before his shift began and attempted to throw away trash from his car in a medication room in the Hospital.   Plaintiff entered the

---

[1] The facts set forth herein are derived from Plaintiff's First Amended Complaint (Doc. # 17), which must be taken as true for purposes of adjudicating the pending motions to dismiss.

room using a Hospital-issued key card and inserted his trash into a biohazard container inside.  As he was doing so, a fellow nurse, Defendant Kim Bellew, entered the room. Plaintiff greeted her and left the room.  According to Plaintiff, he had been in the room for a total of thirty to forty-five seconds.

Bellew then contacted Paula Walters and Defendant Joyce Menshouse, both Nurse Managers at Defendant Hospital, and reported her encounter with Plaintiff.  Bellew later drafted a written statement implying that Plaintiff had been using illegal drugs in the medication room.  As Plaintiff began his shift on October 9, 2010, Menshouse, flanked by security guards, confronted Plaintiff, required that he submit to a drug test, and suspended his employment pending the results.

On October 14, 2010, Plaintiff e-mailed Paula Walters and asked when he could return to work.  Walters then set up a meeting between Plaintiff and Menshouse for October 18, 2010.  At the meeting, Menshouse informed Plaintiff that he had passed the drug screen and that an internal investigation revealed that no medication was missing from the Hospital.  Nevertheless, Menshouse terminated Plaintiff's employment for "being in an unauthorized area of the hospital."  (Doc. # 17, ¶ 61).  According to Plaintiff, his termination was based in part upon a discussion between three of his supervisors at Defendant Hospital: Defendants Jennifer Moore, Vice President of Patient Care Services and Chief Nursing Officer, Judy Daniels, Vice President of Human Resources, and Jeanni Thomas, Director of Nursing.

Although Plaintiff was subsequently awarded unemployment compensation benefits, Defendant Hospital chose to appeal his compensation award.  During a hearing on the matter, the Hearing Officer asked Defendant Thomas to identify a code of conduct in

3

Defendant Hospital's Employee Handbook that justified the Hospital's decision to fire Plaintiff for a first offense. Since "being in an unauthorized area" was not an offense in the Handbook, Thomas searched the Handbook for several minutes before responding that Plaintiff had been terminated for loitering. According to the Handbook, a first offense of loitering merits a verbal warning. At some point in the Hearing, Thomas allegedly admitted to the Hearing Officer that she discharged Plaintiff because she suspected that he had attempted to inject himself with illegal drugs using a syringe. Ultimately, the Hospital's appeal was denied.

In February of 2011, a former colleague telephoned Plaintiff and told him that his Kentucky nursing license was under investigation according to the Kentucky Board of Nursing's ("the Board") website. Plaintiff later learned that Defendant Thomas had submitted a complaint to the Board implying Plaintiff had been discharged because the Hospital suspected him of trying to access illegal drugs from the medication room. Although the Board later dismissed the complaint due to insufficient evidence, the Board shared the complaint with several professional associations of nurses, and the complaint (along with all related records) has allegedly been made available to the public pursuant to the Kentucky Open Records Act. In addition to publishing the complaint, Plaintiff alleges that Defendants spread false rumors to his former co-workers about his termination and suspected drug use.

Plaintiff initiated the instant action with the filing of a Complaint on October 14, 2011. (*See* Doc. # 1). After the Original Defendants filed a Motion To Dismiss (Doc. # 9), Plaintiff filed his First Amended Complaint naming Jennifer Moore and Judy Daniels (both Hospital administrators) as additional Defendants, and asserting twelve counts as follows: disability

4

discrimination in employment in violation of the ADA, against all Defendants except Bellew (Count I); disability discrimination in employment in violation of the Rehabilitation Act, against all Defendants except Bellew (Count II); wrongful termination in violation of public policy against the Corporate Defendants (Count III); breach of contract against the Corporate Defendants (Count IV); promissory estoppel against the Corporate Defendants (Count V); intentional interference with an employment contract/relationship between Plaintiff and the Corporate Defendants against the Individual Defendants (Count VI); negligent hiring, retention, and supervision against all Defendants except Bellew (Count VII); intentional interference with a business relationship between Plaintiff and the Kentucky Board of Nursing against Defendant Thomas and the Corporate Defendants (Count VIII); defamation against Defendant Thomas, Defendant Bellew, and the Corporate Defendants (Count IX); intentional infliction of emotional distress against all Defendants (Count X); negligence against all Defendants (Count XI), and false light against all Defendants (Count XII).  Plaintiff also filed a Response To Defendants' Motion To Dismiss (Doc. # 20), and the Original Defendants filed a Reply (Doc. # 22).

In their Reply (Doc. # 22), the Original Defendants largely concede that Plaintiff's First Amended Complaint moots their challenge to Count VI (intentional interference with an employment contract/relationship), Count VIII (intentional interference with a business relationship), and Count IX (defamation) of that Complaint.  (*See* Doc. # 22, pp. 2-3).  However, the Original Defendants still move the Court to dismiss Count I (disability discrimination under the ADA) and Count II (disability discrimination under the Rehabilitation Act) as to Defendants Thomas, Damron, and Menshouse, as well as Count III (wrongful termination in violation of public policy), Count VII (negligent hiring, retention,

5

and supervision), Count X (intentional infliction of emotional distress), and Count XI (negligence).  (*See* Doc. # 22, p. 3).

Newly-added Defendants Moore and Daniels have filed a separate Motion To Dismiss (Doc. # 26), joining in the Original Defendants' Motion To Dismiss (Doc. # 9) as to Count I (disability discrimination under the ADA), Count II (disability discrimination under the Rehabilitation Act), Count VII (negligent hiring, retention, and supervision), Count X (intentional infliction of emotional distress), and Count XI (negligence) of the First Amended Complaint.  Defendants Moore and Daniels further move the Court to dismiss Count VI (intentional interference with an employment contract/relationship), Count VII (negligent hiring, retention, and/or supervision), and Count XII (false light) as barred by the statute of limitations as to said Defendants.

Plaintiff has also filed the instant Motion For Leave To File A Second Amended Complaint (Doc. # 45) for the sole purpose of bolstering the false light claims attacked by Defendants Moore and Daniels in their Reply (Doc. # 43).

### III.   ANALYSIS

#### A.   Standard of Review

Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In reviewing a Rule 12(b)(6) motion to dismiss, this Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [his] factual allegations as true.  When an allegation is capable of more than one inference, it must be construed in the plaintiff's

favor." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted).  The Court, however, is not bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), or legal conclusions unsupported by well-pleaded facts.  *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990).

To survive a motion to dismiss, the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but it must present "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  To satisfy this standard, the complaint must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  *Id.* at 555.  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

**B. Defendants' Motions To Dismiss (Docs. # 9, 26)**

**1.    Plaintiff's First Amended Complaint moots the Original Defendants' challenge to Count VI (intentional interference with an employment contract/relationship), Count VIII (intentional interference with a business relationship), and Count IX (defamation).**

As an initial matter**,** the Court notes that the Original Defendants have effectively conceded that Plaintiff's First Amended Complaint moots their challenge to Count VI (intentional interference with an employment contract/relationship), Count VIII (intentional interference with a business relationship), and Count IX (defamation) of that Complaint.  (*See* Doc. # 22, pp. 2-3).  Based on this concession and the Court's own independent review, the Court will deny the Original Defendants' Motion To Dismiss (Doc. # 9) as to those Counts.

7

2.     **Plaintiff's ADA and Rehabilitation Act claims against the Individual Defendants in their official capacities are duplicative of Plaintiff's ADA and Rehabilitation Act claims against the Corporate Defendants**

Title I of the ADA defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees [...] *and any agent of such person.*" 42 U.S.C. 12111(5)(A)(emphasis added).[2] Most courts agree that "[t]he obvious purpose of this agent provision was to incorporate respondeat superior liability into the statute," *Wathen v. General Elec. Co.*, 115 F.3d 400, 405-06 (6th Cir. 1997)(interpreting Title VII)[3], thereby "ensuring that employers cannot escape respondeat superior liability" for the tortious acts of their employees.  *Lowry v. Clark*, 843 F.Supp. 228, 231 (E.D. Ky. 1994). Several circuits have thus reasoned that under Title VII, a supervisor may only be held liable in his "official capacity" as the "agent" of his employer; he may not be held personally liable.  *See, e.g.*, *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993)(finding that public sector supervisors may be liable under Title VII if they "serve in a supervisory position and excerise[ ] significant control over the plaintiff's hiring, firing, or conditions of employment."); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)(same); *but see Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 362 n.2 (6th Cir. 2001)(noting that the Sixth Circuit has not yet decided whether Title VII permits official capacity suits).

---

[2] The Rehabilitation Act provides that, "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.)...." 29 U.S.C. § 794(d).  Accordingly, the ADA's definition of "employer" applies to the Rehabilitation Act as well.

[3] Since Title VII and the ADA define "employer" in nearly identical fashion, courts use case law interpreting both statutes interchangeably. *See Wathen v. General Electric Co.*, 115 F.3d 400, 404 n.6 (6th Cir. 1997).

8

Here, Plaintiff has pleaded ADA and Rehabilitation Act claims against both the Corporate Defendants and the Individual Defendants in their official capacities. Defendants argue that Plaintiff's claims against the Individual Defendants are duplicative of his claims against the Corporate Defendants and thus should be dismissed. The Court agrees. Naming a supervisor in his official capacity "is the equivalent of suing the employer" since the plaintiff can only recover damages from the employer itself. *See, e.g.*, *Haltek v. Village of Park Forest*, 864 F.Supp. 802, 804 (N.D. Ill. 1994). Several circuits have thus held that "the proper method for a plaintiff to recover under Title VII is by suing the employer*, either by naming the supervisory employees as agents of the employer or by naming the employer directly.*" *Busby, supra* (emphasis added); *accord Sauers, supra*; *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999). As the Fifth Circuit plainly stated it, "a party may not maintain a suit against both an employer and its agent." *Indest*, *supra*.

Where a plaintiff attempts to assert both such claims, the official capacity claim is redundant and subject to dismissal. *See, e.g.*, *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 509 (6th Cir. 1996)(dismissing § 1983 claim against school administrators in their official capacities as redundant of claims against the school board); *C.A. ex rel. G.A. v. Morgan County. Bd. of Educ.*, 577 F.Supp.2d 886, 890 (E.D. Ky. 2008)(same); *Meade v. Ohashi Technica U.S.A., Inc.*, No. 2:08-cv-959, 2009 U.S. Dist. LEXIS 68652, at *8 (S.D. Ohio Aug. 6, 2009)(dismissing Title VII official capacity claims against supervisors as redundant of claims against employer); *Miller v. Rudd*, No. C2-97-317, 2001 U.S. Dist. LEXIS 25974, at *33-35 (S.D. Ohio Feb. 6, 2001)(same); *Indest*, *supra* (same); *Haltek*, *supra* at 806 (same under the ADA and the Rehabilitation Act).

9

Plaintiff offers no rationale for why he believes it is necessary to maintain ADA and Rehabilitation Act claims against both the Corporate and Individual Defendants, and he concedes that the Individual Defendants would have no liability even if he succeeded in his claims against them. Accordingly, the Court will dismiss Plaintiff's ADA and Rehabilitation Act claims against the Individual Defendants because they are "wholly duplicative" of his claims against the Corporate Defendants, and they "add nothing to this litigation." *Meade*, *supra*.

### 3. Plaintiff's claim for wrongful discharge in violation of public policy is preempted by the ADA and the Rehabilitation Act, and is unsupported by the Kentucky Civil Rights Act

Although an employer may generally terminate an at-will employee under Kentucky law "for good cause, for no cause, or for a cause some might view as morally indefensible," *see Grzyb v. Evans*, 700 S.W.2d 399, 400 (Ky. 1985)(citation omitted), an at-will employee may bring a cause of action against his employer for wrongful discharge if he can establish that his firing was "contrary to a fundamental and well-defined public policy as evidenced by a constitutional or statutory provision." *Temple v. Pflugner*, No. 5:09-cv-387-KKC, 2011 U.S. Dist. LEXIS 57976, at *21 (E.D. Ky. May 26, 2011)(citing *Grzyb*, *supra*). A wrongful discharge action will be preempted, however, where the statute the employee relies on as embodying the "well-defined public policy" already provides him a remedy. *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 733 (Ky. 1983); *Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010). Where preemption occurs, the employee's recovery is restricted to the statute's remedial scheme. *See Grzyb*, *supra* at 401.

Here, Plaintiff alleges in Count III that the Corporate Defendants wrongfully discharged him in violation of public policy. According to Plaintiff, the Corporate

10

Defendants discriminated against him by firing him after he requested to return to work "under the continued supervision of the KARE program." (Doc. # 17, ¶¶ 57 & 59). Plaintiff asserts that in so doing, the Corporate Defendants retaliated against him for seeking a reasonable accommodation and thereby violated the public policies underlying the ADA, the Rehabilitation Act, and the Kentucky Civil Rights Act ("KCRA").

The Corporate Defendants do not dispute that the ADA and the Rehabilitation Act represent "well-defined public policies" prohibiting employer retaliation against a disabled employee who seeks a reasonable accommodation. Instead, the Corporate Defendants correctly note that Plaintiff's wrongful discharge claims are preempted by the ADA and the Rehabilitation Act because both statutes provide Plaintiff a remedy. *See, e.g.*, *White v. Humana Ins. Co.*, No. 10-570-C, 2011 U.S. Dist. LEXIS 94407, at **4, 10-11 (W.D. Ky. Aug. 23, 2011)(dismissing wrongful discharge claim as preempted by the KCRA).[4]

Plaintiff attempts to argue that preemption only occurs when the statutory remedy is "adequate." (Doc. # 20, pp. 29-34). Accordingly, Plaintiff maintains that the remedies embodied in the ADA and the Rehabilitation Act are inadequate because they cap punitive damages. (*Id.*). But the Corporate Defendants rightly observe that under Kentucky law, preemption does not depend upon whether a plaintiff regards the statute's remedy as "adequate"; it depends solely on whether the statute provides a plaintiff any remedy at all. (Doc. # 22, p. 9). Indeed, in *Grzyb*, the Kentucky Supreme Court never mentioned the "adequacy" of the statute's remedy, focusing instead on its exclusivity. *See Grzyb*, 700

___

[4] Because the language of the KCRA mirrors that of the ADA and the Rehabilitation Act, courts interpreting the ADA may use decisional law interpreting the KCRA. *See, e.g.*, *White*, *supra* at *4 (citing *Brohm v. Jh Props,* 149 F.3d 517, 520 (6th Cir. 1998)).

S.W.2d at 401; *accord Oliver v. Federated Mut. Ins. Co.*, No. 6:06-521-DCR, 2008 U.S. Dist. LEXIS 20806, at *37 (E.D. Ky. Mar. 17, 2008); *Preston v. City of Danville*, No. 99-461, 2000 U.S. Dist. LEXIS 20565, at *24 (E.D. Ky. Nov. 22, 2000). Therefore, the Court declines Plaintiff's invitation to evaluate the adequacy of the statutory remedies at issue and finds that Plaintiff's wrongful discharge claims under the ADA and the Rehabilitation Act are preempted by those statutes.

With regard to the KCRA, Plaintiff concedes that it excludes persons with current and past drug addictions, such as himself, from the Act's definition of "disability." (Doc. # 20, p. 28) (discussing K.R.S. § 344.010). Nevertheless, he asserts that it is the public policy of Kentucky that an employer may not discriminate against an employee enrolled in a drug rehabilitation program when that employee requests a reasonable accommodation. (Doc. # 20, p. 29). This argument flies directly in the face of the KCRA's plain text, which explicitly excludes such persons from its protections. *See* K.R.S. § 344.010. The Court therefore finds that Plaintiff has not pleaded a valid wrongful discharge claim under the KCRA.

### 4. Plaintiff states a claim for negligent supervision, but fails to state a claim for negligent hiring and retention

In Count VII, Plaintiff alleges negligent hiring, retention, and supervision claims against all Defendants except Defendant Bellew, and in Count XI, Plaintiff asserts a general negligence claim against all Defendants. As an initial matter, Defendants argue that these claims are preempted by the Exclusivity Provision of the Kentucky Workers' Compensation Act, K.R.S. § 342.690(1). (Doc. # 9, pp. 15-19; Doc. # 22, p. 10). The Exclusivity Provision states, in relevant part:

12

> "If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter *shall be exclusive* and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death."

K.R.S. § 342.690(1) (emphasis added).   The Corporate Defendants contend that this provision is self-executing, thus requiring the Court to dismiss Plaintiff's negligent hiring, retention, and supervision claims without further analysis.   They rely on *Burkhart v. Community. Servs. Project, Inc.*, No. 05-37-JGW, 2006 U.S. Dist. LEXIS 34182 (E.D. Ky. May 26, 2006), in which the court granted the defendant's motion to dismiss because it found that the Exclusivity Provision barred the plaintiff's negligent retention and supervision claims.   It appears that the *Burkhart* court viewed the Exclusivity Provision as self-executing because the court dismissed the plaintiff's claims without requiring the defendant to first demonstrate that it had secured payment of compensation.   *Id.* at **18-19.

In direct contravention of *Burkhart*, the Kentucky Supreme Court has held that the Exclusivity Provision is not "self-executing"; rather, it is an affirmative defense which a defendant must plead and prove.   *Gordon v. NKC Hospitals, Inc.*, 887 S.W.2d 360, 363 (Ky. 1994); *accord*, *Becht v. Owens Corning Fiberglas Corp.*, 196 F.3d 650, 654 (6th Cir. 1999).   As the *Gordon* court reasoned, if the Exclusivity Provision were self-executing, it would render superfluous K.R.S. § 342.690(2), which permits an employee to sue in tort when the employer fails to secure payment of compensation.   887 S.W.2d at 362.   The Court finds that *Gordon* is controlling here.   To the extent that *Burkhart* interpreted the Exclusivity Provision to be self-executing, the Court declines to follow its holding.   The Exclusivity Provision is an affirmative defense that the Corporate Defendants must plead

13

and prove.

To prove the Exclusivity Provision as an affirmative defense, a defendant must demonstrate that it has secured payment of compensation by providing the Court "[a] certification of coverage from the Department of Workers' Claims or an uncontroverted affidavit from the employer's insurer." *See, e.g.*, *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 283-84 (Ky. App. 2009); *General Elec. Co. v. Cain*, 236 S.W.3d 579, 605 (Ky. 2007). If an employer tenders such proof, the burden shifts to the worker to show that the coverage is in some way deficient. *Id.*

In their Reply Memorandum (Doc. # 43), Defendants Moore and Daniels argue that all Defendants have now met this burden because Defendant Hospital has asserted the Exclusivity Provision as its Ninth Affirmative Defense, (*see* Doc. # 25, p. 20), and attached its workers' compensation coverage certificate to its Answer.  (*See* Doc. # 25-2).  They further argue that the Court can take judicial notice of this certificate as a public record and thereby dismiss Plaintiff's negligent hiring, retention, and supervision claims, and Plaintiff's general negligence claim, as to all Defendants.

The Court finds, however, that it would be improper to take judicial notice of this disputed document.  When ruling on a 12(b)(6) motion, a court can take judicial notice of the existence of a public record, but not the truth of its contents.  *Passa v. City of Columbus*, 123 F.App'x 694, 697 (6th Cir. 2005).  The rationale behind this rule is to protect the opposing party who has not had a proper opportunity to dispute the contents of the record to be noticed.  *Id.*  Here, Plaintiff flatly denies that the document is what Defendants say it is.  (*See* Doc. # 44-1, pp. 8-13).  In fact, Plaintiff posits that the so-called "certificate" is in fact a labor law poster typically displayed in a break room, *see* 803 K.A.R. § 25:200

14

(describing a "Worker's Compensation Notice"), not the "Certification of Coverage" required to prove the Exclusivity Provision as an affirmative defense.  *See* K.R.S. § 342.345; 803 K.A.R. § 25:021.  In view of this dispute, the Court finds that it would not be appropriate to take judicial notice of the document in question.

The Corporate Defendants next argue that Plaintiff has failed to set forth sufficient facts to state a claim for negligent hiring, retention, or supervision pursuant to Fed. R. Civ. P. 12(b)(6).  In order to state a claim for negligent hiring or retention, a plaintiff must show that the defendant employer knew or reasonably should have known that (1) the employee was unfit for the job for which he was employed, and (2) that his placement or retention in that job created an unreasonable risk of harm to the plaintiff.  *Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000); *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. App. 1998).

Here, Plaintiff has not alleged that the Corporate Defendants knew or should have known at the time they hired the Individual Defendants that those Defendants were unfit for their duties.  *See Warner v. Bob Evans Farms, Inc.*, No. 5:09-cv-63-KKC, 2010 WL 1451354, at *3 (E.D. Ky. Apr. 8, 2010)(dismissing negligent hiring and retention claims where plaintiff failed to allege that defendant knew of employee's unfitness at time of hiring).  Nor does Plaintiff allege that after hiring the Individual Defendants, the Corporate Defendants became aware or should have become aware of any facts suggesting the Individual Defendants were unfit for their duties.  *See id.*  The Court will therefore dismiss these claims.

However, the Court will not dismiss Plaintiff's negligent supervision claim.  Under Kentucky law, negligent supervision claims are governed by the Restatement (Second) of Agency § 213.  *See Smith v. Isaacs*, 777 S.W.2d 912, 914 (Ky. 1989).  As a general matter,

15

negligent supervision liability will adhere where the employer "knew or had reason to know of the risk that the employment created."  *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003).  Thus, a plaintiff must demonstrate that his employer was:

> "negligent or reckless [...]
> (a) in giving improper or ambiguous orders or in failing to make proper regulations;
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;
> (c) in the supervision of the activity; or
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control."

Restatement (Second) of Agency § 213 (1958).

Here, Plaintiff has alleged that there have been recurring accusations of illegal drug use against Hospital employees and that these accusations have fostered "paranoia" among Hospital management and employees, leading to mass drug screens of employees, terminations of employees, and "heightened scrutiny" of employees with former drug additions, such as Plaintiff.  (Doc. # 17, ¶¶ 91-95).  Plaintiff alleges that despite their awareness of this paranoid climate, Defendants failed to institute adequate policies or otherwise supervise and train Hospital staff in how to: (1) address suspected drug theft without violating the ADA; (2) comply with Kentucky law when submitting complaints about Hospital nurses to the Kentucky Board of Nursing; and (3) maintain the confidentiality and privacy of employees suspected of illegal drug use.  (*Id.* at ¶¶ 96-98).  Plaintiff goes on to detail how all of these factors led Defendants to terminate his employment despite allegedly finding no evidence whatsoever that he had attempted to steal or use prescription medication from the Hospital.

The Court finds that these facts adequately state a claim for negligent supervision. The Individual Defendants were responsible for, *inter alia*, complying with the ADA in hiring and firing staff, and complying with Kentucky law in submitting complaints about staff to the Kentucky Board of Nursing.  The Corporate Defendants knew or should have known that failing to adequately supervise the Individual Defendants in carrying out these important responsibilities created a risk of injury to Hospital staff.  *See, e.g.*, *Dempsey v. City of Lawrenceburg*, No. 3:09-33-DCR, 2010 U.S. Dist. LEXIS 100904, at *22-23 (E.D. Ky. Sep. 23, 2010)(denying defendant summary judgment where plaintiff created genuine issue of fact as to whether city properly trained its employees on how to serve and interpret emergency protective orders).  The Court will therefore allow Plaintiff's negligent supervision claim in Count VII to proceed.  While Defendants also move to dismiss Plaintiff's general negligence claim in Count XI on Rule 12(b)(6) grounds, they do not set forth specific arguments supporting their motion.  Accordingly, the Court will permit Count XI to proceed as well.

### 5.   Plaintiff states a claim for intentional infliction of emotional distress against the Corporate Defendants, Defendant Thomas, and Defendant Bellew, but not against the remaining Defendants

Defendants allege that Plaintiff has failed to state a claim in Count X for intentional infliction of emotional distress ("IIED").  To state a claim for IIED, a plaintiff must allege: (1) the conduct at issue was intentional or reckless; (2) that conduct was "so outrageous and intolerable that if offends against the generally accepted standards of decency and morality"; (3) there was a causal connection between that conduct and the distress; and (4) the distress was severe.  *Osborne v. Payne*, 31 S.W.3d 911, 913-14 (Ky. 2000). "Outrageous and intolerable conduct" is conduct "so outrageous in character, and so

17

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Wathen v. General Elec. Co.*, 115 F.3d 400, 407 (6th Cir. 1997)(quoting *Humana v. Seitz*, 796 S.W.2d 1, 4 (Ky. 1990)). Defendants argue that mere employment termination does not constitute "outrageous and intolerable conduct."

The Sixth Circuit has held that "an employee's termination, even if based on discrimination, does not rise to the level of 'extreme and outrageous conduct.'" *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999)(applying Ohio law). Defendants cite to *Benningfield v. Petit Environmental, Inc.*, in which the Kentucky Court of Appeals followed *Godfredson* and affirmed summary judgement in favor of the employer principally because the employee "only allege[d] his termination as grounds for his IIED claim." 183 S.W.3d 567, 572 (Ky. App. 2005).

Plaintiff distinguishes *Benningfield* as lacking the malicious post-termination conduct alleged in the instant case. Plaintiff directs the Court to *Kroger Co. v. Wilgruber*, 920 S.W.2d 61 (Ky. 1996), where the Kentucky Supreme Court affirmed the trial court's denial of a directed verdict in favor of the defendant-employer on the plaintiff's IIED claim. *Id.* at 67. According to the court, there was sufficient evidence to submit the IIED claim to the jury, including the defendant-employer's attempts to "coerce [the plaintiff] to sign release papers exonerating [the defendant] from its wrongful discharge of [plaintiff]," and the defendant's attempt to deny the plaintiff disability payments by falsely informing its disability carrier that the plaintiff was faking illness, and that he was a person of bad character. *Id.* at 66. In the instant case, Defendants allegedly partook in similar "malicious and oppressive post-termination conduct" when they opposed his unemployment compensation

18

award, submitted a complaint against his nursing license, and spread false rumors about him, all based on their discredited suspicions of his drug theft and/or use.  (Doc. # 20, p. 71).  Plaintiff alleges that by these actions, Defendants intended to end his nursing career.

At this early stage of the case, the Court is unprepared to say that such conduct does not amount to "outrageous and intolerable conduct" as a matter of law.  *See Sprowls v. Oakwood Mobile Homes, Inc.*, 119 F.Supp.2d 694, 697 (W.D. Ky. 2000)("[I]t would be unfairly presumptuous for this Court to conclude these facts and those developed through discovery support no reasonable basis for the plaintiff's claim that [the defendant's] behavior offends generally accepted standards of morality or decency.").  Thus, the Court will permit Plaintiff's IIED claims against the Corporate Defendants, Defendant Thomas, and Defendant Bellew, because Plaintiff has offered specific facts supporting his allegation that they took part in this post-termination conduct.  By contrast, Plaintiff has not alleged with specificity that Defendants Damron, Menshouse, Moore, and Daniels engaged in that conduct; rather, he has only alleged that said Defendants were responsible for his termination.   Accordingly, the Court will dismiss Plaintiff's IIED claims against said Defendants.  *See Godfredson*, *supra* at 376.

### 6.    Plaintiff fails to state a claim for false light against Defendants Moore and Daniels

In Count XII, Plaintiff alleges false light against all Defendants.  In Kentucky, the tort of false light requires the plaintiff to show that the defendant gave "publicity to a matter that place[d] [the plaintiff] before the public in a false light."  Restatement (Second) of Torts § 652E (1976); *Rufra v. U.S. Bankcorp, Inc.*, No. 3:05-cv-594-H, 2006 WL 2178278, at *6 (W.D. Ky. July 28, 2006).  As this Court has previously held, "'publicity' here requires that

19

the private information be passed along in a way substantially certain to become general knowledge either through dissemination to the public at large or to a multitude of persons." *Grippa v. St. Elizabeth Medical Center, Inc.*, No. 10-64-DLB, 2012 WL 360035, at *9 (E.D. Ky. Feb. 2, 2012)(internal citation and quotation omitted). As a result, "a communication to a single person or a small group of persons does not constitute publicity." *Id.*

Here, Defendants Moore and Daniels argue that Plaintiff has not met his pleading burden to sustain a claim for false light against them. Plaintiff's sole relevant allegation is that a former co-worker telephoned him and told him that Plaintiff's nursing license was under investigation according to the Kentucky Board of Nursing's website. (*See* Doc. # 17, ¶ 75). This allegation is deficient in two respects. First, it does not allege that either Moore or Daniels was responsible for spreading the news about Plaintiff's nursing license to Plaintiff's (unnamed) former colleague. Second, even if the Court could somehow infer that Moore or Daniels was the source of this information, a communication to a singular person does not amount to "publicity" for purposes of a false light claim. *See Grippa*, *supra*. Therefore, the Court will dismiss Plaintiff's false light claim against Defendants Moore and Daniels pursuant to Rule 12(b)(6). *See Rufra*, *supra* (dismissing false light claim because defendant was alleged to have communicated the matter at issue to a few people, not the public at large); *Warner v. Bob Evans Farms, Inc.*, 5:09-cv-63-KKC, 2010 U.S. Dist. LEXIS, at **13-16 (E.D. Ky. Apr. 8, 2010)(dismissing false light claim because, among other things, plaintiff failed to specify how the matter at issue was published to the public).

**7.    Plaintiff's claims against Defendants Moore and Daniels for Intentional Interference With An Employment Contract/Relationship and Negligent Hiring, Retention, and Supervision are not barred by the statute of limitations**

Defendants Moore and Daniels assert that Plaintiff's false light claim (Count XII) is subject to Kentucky's one-year statute of limitations, K.R.S. § 413.140.  (Doc. # 26, p. 4). They further contend that Plaintiff's negligent hiring/retention/supervision claim (Count VII), and intentional interference with employment contract/relationship claim (Count VI) are also subject to a one-year statute of limitations because they are founded on the same conduct alleged in Plaintiff's false light claim.  (Doc. # 26, pp. 4-8)(citing *Lashlee v. Sumner*, 570 F.2d 107, 109 (6th Cir. 1978)("The rule is firmly established in Kentucky that a statute of limitations which specifically mentions a recognized tort applies to all actions founded on that tort regardless of the method by which it is claimed the tort has been committed.")). Moreover, as Defendants read the Complaint (Doc. # 17), their alleged conduct occurred more than one year after Plaintiff brought these three Counts.  Accordingly, they conclude that all three Counts are barred by the one-year statute of limitations.

By contrast, Plaintiff asserts that all three Counts are subject to Kentucky's five-year statute of limitations, K.R.S. § 413.120.  He further argues that even if the one-year statute of limitations did apply, Defendants' conduct would fall within that statute because it occurred as late as February of 2011.  (*See* Doc. # 39, p. 2).

In the Court's view, it is doubtful that a false light claim is subject to the one-year statute of limitations.  K.R.S. § 413.140(d), upon which Defendants rely, provides that a one-year statute of limitations applies to actions for defamation.  It does not mention false light, nor any other action for invasion of privacy.  In fact, in all of Defendants' cited cases, the courts applied a one-year statute of limitations to the false light claims *only* because they sprang from the same conduct underlying the plaintiffs' defamation claims.  *See Lashlee*, *supra*; *Warner, supra*, at *5; *Branham v. Micro Computer Analysts*, 350 F.App'x

21

35, 38 (6th Cir. 2009); *Salyer v. Southern Poverty Law Center, Inc.*, 701 F.Supp.2d 912, 920 (W.D. Ky. 2009). Thus, it is more likely that a stand-alone false light claim is subject to the five-year statute of limitations.

Regardless, the Court need not decide this issue in the case before it because, as explained above, the Court will dismiss Plaintiff's false light claim pursuant to Fed. R. Civ. P. 12(b)(6). This moots Defendants argument that the one-year statute of limitations should apply to Plaintiff's negligent supervision and intentional interference with employment contract/relationship claims because they are based on the same conduct underlying Plaintiff's false light claim. Absent the false light claim, the two remaining claims are now clearly subject to the five year statute of limitations. *See* K.R.S. § 413.120(7). Defendants' alleged conduct falls well within this time period.

### C.   Plaintiff's Motion For Leave To File A Second Amended Complaint (Doc. # 45) Is Denied Because the Proposed Amendments Would be Futile.

By the instant Motion For Leave To File A Second Amended Complaint, Plaintiff seeks to file a Second Amended Complaint (Doc. # 45-1) solely to add additional allegations bolstering his false light claims against Defendants Moore and Daniels in Count XII. However, Plaintiff's new allegations still lack enough specificity to state a claim for false light under Fed. R. Civ. P. 12(b)(6). For instance, Plaintiff now alleges that his former colleague knew about the complaint against Plaintiff's nursing license because the Individual Defendants "directly or indirectly" publicized these matters to him. (*See* Doc. # 45-1, ¶ 88). This is a wholly conclusory allegation that fails to allege what exactly Defendants said, as well as where and when they said it. Likewise, Plaintiff's new allegation that Defendants publicized unflattering details about his termination and nursing

22

board complaint to "other former colleagues of [Plaintiff's] and other individuals in the public at large" is void of requisite details, such as the identities of these anonymous persons. (*Id.* at ¶ 89).   Since the Court would still dismiss Plaintiff's false light claims even with the addition of Plaintiff's new allegations, the Court will deny the instant Motion (Doc. # 45) as futile.  *See Carson v. United States Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011)("Nevertheless, leave to amend should be denied if the amendment . . . would be futile."); *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.")(quotation omitted).

## IV.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)   The Motion To Dismiss Complaint (Doc. #9) filed herein by Defendants Our Lady of Bellefonte Hospital, Inc., Bon Secours, Inc., Bon Secours Health System, Inc., Bon Secours Kentucky Health System, Inc., Jeanni Thomas, Netti Damron, Joyce Menshouse, and Kim Bellew, and the Motion To Dismiss Amended Complaint In Part (Doc. # 26) filed herein by Defendants Jennifer Moore and Judy Daniels are hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

(a)   The Motions To Dismiss (Docs. # 9, 26) are **GRANTED** as to Counts I, II, III, VII, X, and XII of the First Amended Complaint (Doc. # 17) as follows:

(1)     Count I (disability discrimination under the ADA) is dismissed as to Defendants Thomas, Damron, and Menshouse;

(2)     Count II (disability discrimination under the Rehabilitation Act) is dismissed as to Defendants Thomas, Damron, and Menshouse;

(3)     Count III (wrongful termination in violation of public policy) is dismissed;

(4)     Count VII's negligent hiring and retention claims are dismissed;

(5)     Count X (intentional infliction of emotional distress) is dismissed as to Defendants Damron, Menshouse, Daniels, and Moore;

(6)     Count XII (false light) is dismissed as to Defendants Moore and Daniels;

(b)     The Motions To Dismiss (Docs. # 9, 26) are **DENIED** as to Count VI (intentional interference with an employment contract/relationship), Count VII's negligent supervision claims, Count VIII (intentional interference with a business relationship), Count IX (defamation), Count X (intentional infliction of emotional distress) as to the Corporate Defendants, Defendant Thomas, and Defendant Bellew, Count XI (negligence), and Count XII (false light) as to the Corporate Defendants, Defendant Thomas, Defendant Menshouse, Defendant Damron, and Defendant Bellew.

(2)     Plaintiff's Motion For Leave To File A Second Amended Complaint (Doc. # 45) is hereby **DENIED**; and

(3)     Within twenty-one (21) days from the date of service of this Order, the parties, by counsel, shall meet, either in person or by telephone, to discuss the nature and basis of their remaining claims and defenses, and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Rule 26(a)(1) of the Federal Rules of Civil Procedure, and to develop a proposed discovery plan. *See* Fed. R. Civ. P. 26(f).

(4)     Within ten (10) days after the meeting, the parties shall file a joint status report containing:

   (a)     the proposed discovery plan;

   (b)     the parties' estimate of the time necessary to file pretrial motions;

   (c)     the parties' belief as to whether the matter is suitable for some form of alternative dispute resolution such as mediation;

   (d)     the parties' estimate as to the probable length of trial; and

   (e)     whether the parties will consent to the jurisdiction of a magistrate judge for all further proceedings, including trial, pursuant to 28 U.S.C. § 636(c).  Consent forms are attached to this Order and forms signed by all parties' counsel should be filed by no later than the date counsels' joint status report is due.  If all parties, by counsel, so consent, the Clerk of Court shall reassign this matter to the appropriate Magistrate Judge without the necessity of further order of

the Court. L.R. 73.1(c).

Should the parties find that a joint report is not possible, the parties shall each file individual reports which the Court shall entertain for the purposes of setting out its Scheduling Order or other appropriate Order.

This 20th day of September, 2012.



Signed By:

*David L. Bunning*

**United States District Judge**

G:\DATA\Opinions\Ashland\0-11-110 MOO - granting in part and denying in part MTD and denying Mtn to Amend.wpd